## Citizens Trust Company, Executor, v. Mauser.

For collateral cases in same matter, see 11 Lehigh Co. L. J. 271 and 418.

*Dallas Dillinger, Jr., Fred B. Gernerd, Morton Z. Paul* and *Francis Shunk Brown,* for plaintiff and motions.

*Butz, Rupp & Welty* and *Owen J. Roberts,* for defendants.

RENO, P. J., Jan. 7, 1929.—The Mauser Mill Company was incorporated in 1902 with an authorized capital stock of $200,000, divided into 4000 shares of common stock of the par value of $50 each, all of which was issued. On Jan. 2, 1917, J. Mark Mauser owned 1340 shares, George B. Mauser owned 1190 shares and Harry J. Lerch owned 1190 shares. On that date they entered into a written contract, wherein they agreed that "upon the death of either, the survivors shall and will . . . purchase the shares owned by the other at the time of his decease . . . at the price of $100 per share." Subsequently, the capital stock was increased: first, by issuing $100,000 of preferred stock; and, second, by issuing $200,000 of common stock. The preferred stock was sold for cash and the common stock was distributed as a stock dividend. Thus, prior to the death of J. Mark Mauser, the total authorized and issued capital stock was $500,000, of which $100,000 was represented by preferred stock and $400,000 was in common stock.

J. Mark Mauser died Aug. 3, 1924, owning 2420 shares of stock. Upon his widow's petition, the Orphans' Court of Lehigh County directed his executors to tender to Harry J. Lerch and George B. Mauser the 2420 shares at the agreed price of $100 per share. The tender was made, and upon the refusal of Lerch and Mauser to purchase, this suit was instituted. The trial resulted in a verdict for defendant, and there are before us plaintiff's motions for a new trial and for judgment *n. o. v.*

It will not be necessary to vindicate our views upon the main questions here involved. These views have been expressed in the opinion of the Orphans' Court, already referred to, and in the charge to the jury. We have heretofore held, and now hold, that unless the written contract was expressly canceled or rescinded or abandoned during J. Mark Mauser's life, or impliedly by an act or acts in which he participated, it remained in force and furnished a basis of recovery in an action by his estate against Harry J. Lerch and George B. Mauser. Upon this theory the case was tried and submitted to the jury, and upon this theory it is now adjudicated herein. If the theory is erroneous, it has at least been adhered to consistently. But we do not mean to say that defendants, who have the verdict, have submitted to this ruling. They contended in the Orphans' Court, in the trial and in the Common Pleas, and on the motions for a new trial and for judgment *n. o. v.*, that the change in the financial structure of the Mauser Milling Company during the life of J. Mark Mauser, with his active participation as an officer thereof, by itself and without anything more, avoided and abrogated the contract. We confess that in the prolonged consideration which we have given to the case this theory has seemed to possess attractions as an equitable and conscionable solution of the problem, but since it has not had appellate sanction in Pennsylvania, and inasmuch as the case was tried and submitted upon the theory of an actual, consensual and either express or implied cancellation, rescission or abandonment of the contract, the motions now before us are determined upon that basis.

So consistently was this theory adhered to in the trial that the rulings of the trial judge upon questions of evidence are invariably reflections of it. That is to say, that if, in the opinion of the trial judge, proffered evidence proved, or tended to prove, a cancellation, a rescission or an abandonment of the contract, it was received, and if it failed to throw light upon that question, it was rejected. For that reason, defendant was permitted to show circumstances from which such cancellation might be inferred, including the stock dividend, taxation reports over the signature of J. Mark Mauser, showing the value of the stock, and the prices at which stock was sold. All this, and more of kindred nature, bore upon the question as to whether it was likely that J. Mark Mauser had expressly in his lifetime canceled the contract. However, when it was proposed by plaintiffs to show dividends, profits, sales of goods, salaries, surplus, undivided profits and other factors from which the jury might infer or fix the value of the stock, independently of the value placed upon it by J. Mark Mauser in his lifetime and by his will, it was rejected. The question trying was not the value of the stock in the eyes of the jury, but the value placed upon it by J. Mark Mauser. His estimate of its value was important, for his estimate shed light upon the question of his possible or probable cancellation of the contract. The estimate of the jury, drawn from the factors of value which plaintiff sought to show, was of no importance and shed no light upon that question. This general statement fully explains our rulings upon many objections raised in the trial and which have been renewed in the reasons for a new trial.

Plaintiff undertook to show as a part of its case the tender of the stock and defendants' refusal to accept. On cross-examination, defendants showed that the refusal to accept was in writing, and, over plaintiff's objection, we permitted defendants to read the written refusal in evidence. The refusal set forth the reasons for defendants' refusal and, of course, to that extent was a self-serving declaration. In addition to this, so plaintiff argues, defendants, who, because of J. Mark Mauser's death, were incompetent witnesses, were

permitted thus indirectly to testify to matters occurring in decedent's lifetime. These contentions overlook the fact that the court expressly admitted the writing "for the limited purpose of showing the answer of defendants to the tender and for no other purpose." We believe that defendants were entitled to show that when the tender was made they did not stand mute and offered no explanation of their refusal to take the stock. Plaintiff having shown a part of an occurrence, defendants were entitled to put in the remainder in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance: 4 Wigmore on Evidence, § 2113. The fact that part of the completed utterance was incompetent need not concern us if it was part of the *res gestæ*: Koch v. Howell, 6 W. & S. 350. As to the admissibility of declarations of parties, incompetent as witnesses, made at the time of a tender, see 3 Wigmore, § 1777.

There are a number of other questions raised by the motions, but they do not seem to require discussion. The rulings of the trial judge usually explain the reason for the ruling or they require no statement in their justification.

Now, Jan. 7, 1929, the motions for new trial and judgment *n. o. v.* are overruled and discharged.

From Edwin L. Kohler, Allentown, Pa.